DECISION
{¶ 1} Relator, Lisa Garn, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied compensation for wage loss, pursuant to R.C. 4123.56(B), and to issue an order granting or denying such compensation, excluding the report of Dr. John Beltz.
{¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that the writ of mandamus should be granted and the commission ordered to reconsider relator's application without consideration of the report of Dr. Beltz.
{¶ 3} Despite a decision in her favor, relator has nonetheless filed objections to the magistrate's report. Relator objects to the magistrate's conclusion that Dr. Beltz's report was unequivocal and that the commission was instructed it could obtain an additional medical opinion. A review of Dr. Beltz's report shows he stated unequivocally that the medical evidence did not establish a causal relationship between the allowed conditions of relator's claim and her claimed symptoms. Regardless, inasmuch as the commission must issue a new order without consideration of Dr. Beltz's report, relator's objection is without merit. Relator also objected to the magistrate's decision that the commission could, if it chooses, obtain another medical opinion. While this statement is a correct statement of the law, we agree with relator that it did not pertain to any issue before the magistrate and is a gratuitous comment. Therefore, we strike it from the magistrate's decision.
{¶ 4} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own with the deletion of the following sentence:
{¶ 5} "* * * As to whether the commission may obtain a medical file review by a physician of its choice, the magistrate sees no reason that the commission would be barred from obtaining a medical opinion if it so chooses."
{¶ 6} Relator's objections to the magistrate's decision are overruled in part and sustained in part. This court grants a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied compensation for wage loss, pursuant to R.C. 4123.56(B), and to issue an order granting or denying such compensation, excluding the report of Dr. John Beltz.
Objections overruled in part and sustained in part, writ of mandamus granted.
TYACK, P.J., and BRYANT, J., concur.
 APPENDIX A IN MANDAMUS
{¶ 7} Relator, Lisa Garn, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for wage loss under R.C. 4123.56(B) and to issue an order on consideration of evidence excluding the report of John Beltz, D.C.
Findings of Fact:
{¶ 8} In November 1997, Lisa Garn (formerly Lisa Beatty) sustained an industrial injury while working as a nursing assistant, and her workers' compensation claim was allowed for "lumbar sprain."
{¶ 9} In September 1999, claimant filed a C-9 form seeking approval of further chiropractic care. The Bureau of Workers' Compensation issued a ruling in September 2000, and claimant appealed.
{¶ 10} On October 10, 2000, claimant was examined on behalf of Gateway-MC, Inc., by Steven J. Farrell, M.D., who found insufficient documentation and history to support a causal relationship between claimant's current symptoms and the allowed lumbar sprain. He opined that the chiropractic care had been more palliative than curative, finding no evidence that the chiropractic treatment had resulted in "sustained significant improvement" in the symptoms of the lumbar region. He further stated that supportive care was not necessary for the allowed condition, which had likely resolved. Thus, no further treatment was necessary or appropriate, and claimant had reached maximum medical improvement.
{¶ 11} On October 17, 2000, the commission approved the request for treatment:
 * * * [T]he C-9, dated 09/09/1999, is granted to the extent of this order.
 Based on the report of Dr. Mellon, treatment is granted as follows: "pall[i]ative relief of 2 treatments per month for 3 months." Further treatment and options to be considered after an MRI.
{¶ 12} In December 2000, claimant filed an application for nonworking wage-loss compensation commencing on November 17, 2000. She filed medical reports from William Lorenz, D.C., stating that her symptoms and restrictions were caused by the industrial injury, and supported the application with job-search logs.
{¶ 13} In January 2001, John Beltz, D.C., provided a review of the medical file on behalf of Gateway-MC, Inc., which asked him to render an opinion on the issue of whether chiropractic treatment was appropriate for seven treatments that had been given to claimant from September 1999 through July 2000. Dr. Beltz stated, in part:
 * * * [C]laimant has been treating chiropractically with the physician of record since 1997. Review of the physician of record's daily notes from 12-23-1997 to 01-11-2001 reveals no recent documented work-related exacerbations to explain the need for ongoing chiropractic care. There is documentation of one exacerbation; however, this was from 12-18-1997 when a resident pushed the claimant into a door jam at work. Interestingly enough it is documented on 05-15-2000 that the claimant has low back pain and possible endometriosis. This certainly in my opinion could be causing ongoing low back pain rather than the strain/sprain injuries that occurred three years ago. It was also documented on 12-29-2000 that the claimant was better until lifting baskets of dry clothes. Once again, this does not document relatedness to the original work injury that occurred three years prior.
 There is documentation of an IME being performed by Dr. Farrell on 10-10-2000. Dr. Farrell opined that he did not find sufficient documentation or history to support a causal relationship of the claimant's current symptoms in the allowed diagnosis of lumbar strain/sprain. It was his opinion that ongoing chiropractic care was not appropriate and did not meet the Miller test. He further opined that ongoing supportive care would not be necessary and maximum therapeutic improvement had been attained.
 * * * I accept the medical documentation provided. It is my opinion that the documentation provided does not support the C-9 dated 12-26-2000 requesting seven retro chiropractic visits * * *.
 1. The documentation provided does not support that the claimant's symptoms she is being treated for are causally related to the claim. My opinion is supported by the IME performed [by Dr. Farrell] on 10-10-2000 along with the documented lack of documentation as outlined above * * *.
 2. There are no allowed diagnoses which would impact medical management of this claim. It is probable however, that the claimant could have ongoing low back pain due to endometriosis along with acute sprain/strain from lifting a basket of clothes as documented * * * on 12-29-2000.
 3. It is my opinion that the current requested services on the C-9 dated 12-26-2000 are not medically appropriate for the allowed conditions in this claim. The current request does not meet the Miller criteria. The documentation does not support that the request is reasonably related to the injury of record * * *. Furthermore the current request would certainly be considered palliative versus curative.
 4. The documentation provided does not show that the treatment to date has resulted in sustained, significant improvement in symptoms related to the allowed conditions of this claim.
 5. It is my opinion that the claimant long ago reached maximum therapeutic improvement and additional supportive care would not be necessary * * *.
{¶ 14} On February 5, 2001, a district hearing officer granted wage-loss compensation, relying on Dr. Lorenz's opinion that claimant's medical restrictions were caused by the allowed condition.
{¶ 15} On February 7, 2001, Dr. Lorenz reported that an MRI showed three bulging discs in claimant's low back, and he reported that claimant had recently worked in a factory doing lifting of up to fifty pounds, which had "caused her extreme pain in her lower back and legs and probably flared up her disc problem."
{¶ 16} In March 2001, a staff hearing officer vacated the order of the district hearing officer and denied the application for wage-loss compensation on the grounds that claimant's current symptoms were not caused by the industrial injury in 1997:
 The claim is currently recognized for a "lumbar sprain." This soft tissue injury is now over 3 years old.
 Claimant request[ed] payment of non-working wage loss compensation due to permanent restrictions allegedly flowing from the allowed conditions. This Staff Hearing Officer does not find claimant's request persuasive.
 The report of Dr. Beltz is most persuasive that claimant's current restrictions are not causally related to this 3 year old soft-tissue injury.
 Therefore, it is the order of this Staff Hearing Officer to DENY claimant's request for wage loss compensation from 11/17/2000 to 01/26/2001 as the probative medical evidence does not establish that claimant has permanent restrictions due to the instant injury that prevent a return to work to the former position of employment.
{¶ 17} Further appeal was denied, and the commissioners denied reconsideration.
Conclusions of Law:
{¶ 18} The issue in this action is whether the commission abused its discretion in its order denying wage-loss compensation. Claimant has argued several reasons that reliance on Dr. Beltz's report was an abuse of discretion: (1) that the opinions rendered by Dr. Beltz did not meet the requisite standard for reasonable medical probability due to his reliance on possibilities; (2) that the commission could not rely, in a determination regarding work restrictions and wage-loss compensation under R.C. 4123.56(B), on a medical report regarding a request for treatment under R.C. 4123.54; (3) that the commission could not rely, in a determination regarding work restrictions/impairment as of November 2000, on a medical opinion regarding the period from September 1999 through July 2000; (4) that the commission could not rely on Dr. Beltz's opinion because he did not examine claimant and essentially adopted the findings and opinions of Dr. Farrell, whose report the commission had rejected; and (5) that the commission's ruling in October 2000 was inconsistent with its reliance on Dr. Beltz in March 2001. The magistrate concludes that, although several of these arguments lack merit, the commission's reliance on Dr. Beltz's report was an abuse of discretion.
{¶ 19} In regard to the first issue, the magistrate accepts the legal principle that a medical opinion is not "some evidence" when it expresses mere possibilities rather than a probability regarding the matter at issue. However, the magistrate notes that Dr. Beltz stated unequivocally that the medical evidence did not establish a causal relationship between the allowed conditions and the claimed symptoms. On that issue, Dr. Beltz stated his opinion with sufficient certainty: "The documentation provided does not support that the claimant's symptoms * * * are causally related to the claim."
{¶ 20} The magistrate agrees that, as to the actual cause or causes of the claimed restrictions/impairments, Dr. Beltz was unsure. He was unable to determine, based on the medical evidence before him, the actual cause of claimant's symptoms. However, the commission did not rely on the latter, speculative comments.
{¶ 21} The commission addressed only a single question, whether the allowed condition was causally related to the claimed restriction or impairment, which was the causation question at issue. See Ohio Adm. Code4125-1-01(D)(1)(A). Where the commission answers "no" to that question, it has no legal duty to proceed further to a determination of what the actual cause was or is. In the subject order, the commission did not attempt to determine the cause of the claimant's impairment/restrictions, and did not accept or reject his comments about possible causes of claimant's impairment.
{¶ 22} Therefore, the magistrate rejects the first argument, concluding that, where a medical report provides a clear and unequivocal opinion on the relevant issue — whether the medical evidence demonstrated that the allowed conditions caused the claimed impairment — the commission may rely on that opinion and disregard speculative comments on a different issue.
{¶ 23} Second, claimant argues that the commission could not rely on Dr. Beltz's report because he had been asked to opine regarding treatment, not functional restrictions. However, claimant cites no authority that would bar the commission from considering the medical report on that basis, and the magistrate is aware of none. Where a medical report includes relevant findings and opinions, the commission may rely on it.
{¶ 24} Third, claimant argues that the commission could not rely, in a determination regarding work restrictions as of November 2000, on a medical opinion regarding the period from September 1999 through July 2000. The magistrate agrees that a physician may opine only as to the period of time for which he has examined claimant or performed a file review. A medical opinion addressing the period from September 1999 through July 2000 would not be relevant to a determination of restrictions/impairment as of November 2000, at least without further explanation by the commission as to the basis of its reliance. However, in the present case, the medical reports reviewed by Dr. Beltz included reports extending into January 2001. Thus, he could render an opinion as to the period of alleged wage loss, commencing in November 2000.
{¶ 25} The fourth and fifth issues are related, and the magistrate addresses them together. In this regard, claimant argues that the commission's reliance on Dr. Beltz's opinion was inconsistent with its prior order in October 2000. Claimant explains that, in approving chiropractic treatment in October 2000, the commission necessarily applied the Miller standard under which it could not approve treatment unless the symptoms were causally related to the allowed condition and the treatment was necessary to treat the allowed condition. Thus, in approving payment for treatment in October 2000, the commission necessarily found that claimant needed treatment for her allowed condition and the commission necessarily rejected the report of Dr. Farrell rendered in October 2000. Claimant argues that, in March 2001, it was fatally inconsistent for the commission to rely on Dr. Beltz's report stating emphatically that treatment from September 1999 through July 2000 should not be approved because the symptoms during that period were not related to the industrial injury.
{¶ 26} It is undisputed that, under State ex rel. Zamora v. Indus. Comm. (1989), 45 Ohio St.3d 17, the commission was barred from relying on the October 2000 opinions of Dr. Farrell after it implicitly rejected them in its October 2000 decision. However, Dr. Beltz's report was submitted after the commission issued its October 2000 decision, and an argument can be made that Zamora does not apply.
{¶ 27} The problem, however, is that Dr. Beltz was not an examining physician whose opinion in January 2001 was based on claimant's medical presentation at that time. Rather he performed only a file review regarding treatment from September 1999 through July 2000. In his report, Dr. Beltz (hired by the same company that hired Dr. Farrell) essentially adopted Dr. Farrell's findings and conclusions, but those findings and conclusions had already been rejected by the commission. See, generally, State ex rel. Hoover Co. v. Indus. Comm. (1995),72 Ohio St.3d 387.
{¶ 28} Moreover, even without explicit reliance on Dr. Farrell, Dr. Beltz took a position and stated a conclusion (i.e., that claimant's symptoms from September 1999 through July 2000 were unrelated to the allowed condition) that directly contradicted the commission's findings in October 2000, at least in part. (The motion at issue in the October 2000 hearing and all the evidence supporting that motion are not in the record, and it is not possible at present to determine precisely the issues that were determined by the commission in its October 2000 order, which is not challenged here.) Without further explanation by the commission of its understanding of the issues and findings of the October 2000 order, and its understanding of the issues and findings in Dr. Beltz's report, the commission's reliance on Dr. Beltz's opinion appears inconsistent and an abuse of discretion.
{¶ 29} Other problems with Dr. Beltz's opinion (and with Dr. Farrell's opinion) also preclude reliance on his report. First, the reports show a misunderstanding of the standards for the approval of requested treatment as opposed to the standards for granting temporary total disability (TTD) compensation.
{¶ 30} The distinction between "curative" care that may yield a fundamental functional improvement and "supportive" care that merely maintains function, and "palliative" care to assuage pain, has relevance to the issue of whether a claimant has reached maximum medical improvement ("MMI") and is ineligible for TTD compensation. E.g., Ohio Adm. Code 4121-3-32(A)(1).
{¶ 31} However, payment can be and is approved for all these types of medical care regardless of the type, based only on the questions of whether the care is "necessary" to treat symptoms causally related to the allowed conditions. See Miller. That is, even when a claimant has reached MMI and cannot receive TTD compensation, he may still require supportive treatment and/or palliative treatment, and such treatment may be approved even when it is not expected to provide sustained improvement of symptoms. See, e.g., State ex rel. Overlow v. Indus. Comm. (1998), Franklin App. No. 97AP-414 (in adopting magistrate's decision, recognizing that a claimant may need treatment that is palliative — to control pain — rather than curative), appeal dismissed, (1998), 83 Ohio St.3d 1405; State ex rel Ellis v. Kenner Products (1999), Franklin App. No. 98AP-1308 (concluding that a claimant need not prove that a requested treatment will significantly improve the allowed condition), adopted (1999) ; State ex rel. Evans v. Indus. Comm. (1999), Franklin App. No. 97APD07-958 (recognizing that the commission may find MMI when further treatment will not yield significant improvement, but may nonetheless authorize medication or treatment to minimize pain or maintain function).
{¶ 32} In addition, Dr. Beltz's commentary on exacerbation of allowed conditions is questionable. He disregarded reported exacerbations of the allowed condition because the exacerbation was not "work-related." However, where a claim has been allowed for a back condition, the commission may approve treatment for subsequent exacerbations of the allowed condition regardless of where the exacerbation occurred — unless the injurious event constituted a new and superseding injury, such that the impairment and/or need for treatment is not attributable to the industrial injury. Whether the intervening event has merely exacerbated the allowed condition, or is a superseding event, must be determined by the commission upon medical evidence addressing that issue. See, generally, State ex rel. Evans v. Indus. Comm. (1992), 64 Ohio St.3d 236; Thomas v. Conrad (1998), 81 Ohio St.3d 475; Cook v. Mayfield (1989),45 Ohio St.3d 200. In the present action, however, Dr. Beltz's report indicates that he assumed that any impairment from an exacerbation occurring away from the workplace could not support a request for treatment, which was an unwarranted assumption that taints his entire opinion.
{¶ 33} Based on the foregoing, the magistrate recommends that the court issue a limited writ of mandamus, returning this matter to the commission to vacate the denial of wage-loss compensation and to reconsider claimant's application, excluding the report of Dr. Beltz. As to whether the commission may obtain a medical file review by a physician of its choice, the magistrate sees no reason that the commission would be barred from obtaining a medical opinion if it so chooses.